UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

PALM SPRINGS MILE ASSOCIATES, LTD.,
a Florida limited partnership; and PHILIPS
LAKE WORTH, LLC, a Florida limited
liability company,

    Plaintiffs,

vs.

T-MOBILE USA, INC., a Delaware corporation,
VIDAL COMMUNICATION SERVICES, INC.,
a Florida corporation, WIRELESS CONNECTIONS
GROUP, INC., a Florida corporation, WC STORE 19
LLC, a Florida limited liability company, WC
STORE 21 LLC, a Florida limited liability company,
DAVID BRAGG, individually, and ERIC DIAZ,
individually,

    Defendants.
_____/

**COMPLAINT**

PALM SPRINGS MILE ASSOCIATES, LTD. ("PSM") and PHILIPS LAKE WORTH, LLC ("PLW") (PSM and PLW, collectively, "Plaintiffs") hereby sue T-MOBILE USA, INC., as successor in interest to SPRINT CORPORATION, VIDAL COMMUNICATIONS SERVICES, INC., WIRELESS CONNECTIONS GROUP, INC., WC STORE 19 LLC, WC STORE 21 LLC, DAVID BRAGG, and ERIC DIAZ, and allege as follows:

## INTRODUCTION

1. This is an action for breach of leases, guarantees, assignments, and tortious interference, seeking damages in excess of $297,000.

2. Defendants are former retailers of Sprint wireless communication products, who lease two separate stores in Plaintiffs' shopping centers. Claiming they can no longer sell Sprint products following the acquisition of Sprint by T-Mobile USA, Inc. ("T-Mobile"), Defendants have stopped paying rent and repudiated their leases, along with their payment obligations to the Plaintiffs.

3. While T-Mobile's actions in interfering with the Lease make it liable to Plaintiffs as well, the actions do not excuse the tenants or their guarantors from their obligations under the leases.

4. Wireless Connections Group, Inc. ("Wireless Connections Group"), David Bragg ("Bragg"), and Eric Diaz ("Diaz"), the guarantors of the Leases, have failed to pay under their respective guarantees as well (Wireless Connections Group, Bragg, and Diaz, collectively, the "Guarantors").

5. Further, Store 19's predecessor in interest under the Lease, Vidal Communications Services, Inc. ("Vidal") has failed to pay pursuant to the Assignment of the Leases to Stores 19 and 21.

6. The Plaintiffs, of course, sympathize with challenges posed by T-Mobile's actions, including to Plaintiffs' own business—as their financial obligations (for which they depend on their tenants' rent payments) remain. Under the express terms and provisions of the Leases, Guarantees, and Assignments, however, the Tenants, Guarantors, and Vidal are obligated to pay Rent and that obligation is not excused.

7.     Nevertheless, on June 4, 2020, Tenants announced their intent not to pay rent and then repudiated their obligation to pay future rent in advance of the next due date. True to their word, they failed to pay rent when due on July 1, 2020.

8.     Accordingly, Plaintiffs were forced to take this legal action to compel Tenants, Guarantors, and Vidal's compliance with their payment obligations, as well as to seek damages from T-Mobile for interfering with Plaintiffs' contracts and business relationships.

9.     The facts are set forth in detail below.

## THE PARTIES AND JURISDICTION

10.    Plaintiff PALM SPRINGS MILE ASSOCIATES, LTD. ("PSM") is a Florida limited liability company, with its principal place of business in Miami-Dade County, Florida. Its partners are as follows:

   a. SL Florida LLC, a Florida limited liability company, whose members are Sheila Chess, who is domiciled in and a citizen of New York; Sheila Levine Irrevocable Grantor Trust, a traditional trust, whose trustee is Jordan Pilevsky, a citizen of New York; and Palm Mile Corp., a New York corporation with its principal place of business in New York;

   b. Allen Pilevsky, who is domiciled in and a citizen of New York;

   c. Palm Springs Mile GP LLC, a Delaware limited liability company, whose members are as follows:

      i. Philip Pilevsky, who is domiciled in and a citizen of New York;

      ii. PP Palm Springs Mile LLC, a Delaware limited liability company, whose sole member is Philip Pilevsky, who is domiciled in and a citizen of New York;

    iii. SIP Palm Springs Mile LLC, a Delaware limited liability company, whose members are as follows:

        a. SIP Hialeah Trust, a traditional trust, whose trustees are Michael T. Pilevsky, who is domiciled in and a citizen of New York; and Samantha J. Hoffman, who is domiciled in and a citizen of New Jersey; and

        b. SIP Descendants Hialeah Trust, a traditional trust, whose trustee is Seth Pilevsky, who is domiciled in and a citizen of New York;

    iv. SJH Palm Springs Mile LLC, a Delaware limited liability company, whose members are as follows:

        a. SJH Hialeah Trust, a traditional trust, whose trustees are Seth Pilevsky, who is domiciled in and a citizen of New York; and Michael Pilevsky, who is domiciled in and a citizen of New York; and

        b. SJH Descendants Hialeah Trust, a traditional trust, whose trustee is Samantha Hoffman, who is domiciled in and a citizen of New Jersey;

    v. MTP Palm Springs Mile LLC, a Delaware limited liability company, whose members are as follows:

        a. MTP Hialeah Trust, a traditional trust, whose trustee is Seth Pilevsky, who is domiciled in and a citizen of New York; and

4

      b. MTP Descendants Hialeah Trust, a traditional trust, whose trustee is Michael Pilevsky, who is domiciled in and a citizen of New York;

  vi. HSL Palm Springs Mile LLC, a Delaware limited liability company, whose members are as follows:

      a. HSL Hialeah Trust, a traditional trust, whose trustees are Michael Pilevsky, who is domiciled in and of New York; and Josef Leifer, who is domiciled in and a citizen of New Jersey; and

      b. HSL Descendants Hialeah Trust, a traditional trust, whose trustees are Heidi Leifer, who is domiciled in and a citizen of New Jersey; and Josef Leifer, who is domiciled in and a citizen of New Jersey;

  vii. Corinne Sprung, who is domiciled in and a citizen of New York;

  viii. Jordan Pilevsky, who is domiciled in and a citizen of New York;

  ix. Stephanie Pilevsky, who is domiciled in and a citizen of New York; and

  x. Joshua Levine, who is domiciled in and a citizen of New York.

11. Plaintiff PHILIPS LAKE WORTH LLC ("PLW") is a Florida limited liability company, with its principal place of business in Palm Beach County, Florida. Its sole member is PL Lake Worth, LLC, whose members are as follows:

  a. Four individuals as follows: Michael Pilevsky, who is domiciled in and a citizen of New York; Corinne Sprung, who is domiciled in and a citizen of New York;

    Josef Leifer, who is domiciled in and a citizen of New Jersey; and Sheila Chess, who is domiciled in and a citizen of New York;

  b. JL Trust, a traditional trust, whose Trustee is Philip Pilevsky, who is domiciled in and a citizen of New York; and,

  c. Lake Worth LP Member LLC, whose members are as follows:

    i. Seth I. Pilevsky Descendants Trust, a traditional trust, whose Trustee is Michael Pilevsky, who is domiciled in and a citizen of New York;

    ii. Seth Pilevsky, who is domiciled in and a citizen of New York; and

    iii. Four traditional trusts – The Andrew Leifer 2503(c) Trust, The Molly Leifer 2503(c) Trust, The Matthew Leifer 2503(c) Trust, and The Ella Leifer 2503(c) Trust – whose Trustees are Josef Leifer, who is domiciled in and a citizen of New Jersey.

12. Defendant T-Mobile is a Delaware Corporation with its principal place of business in Bellevue, Washington. T-Mobile is the successor in interest to Sprint Corporation.

13. Defendant Vidal is a Florida corporation with its principal place of business in Miami, Florida.

14. Defendant Store 19 is a Florida limited liability company with its principal place of business in Hialeah, Florida. Upon information and belief, all of Store 19's members are domiciled in and citizens of Florida. Further, upon information and belief, none of Store 19's members are domiciled in or citizens of New York or New Jersey.

15. Defendant Store 21 is a Florida limited liability company with its principal place of business in Palm Springs, Florida. Upon information and belief, all of Store 21's members are

6

domiciled in and citizens of Florida. Further, upon information and belief, none of Store 21's members are domiciled in or citizens of New York or New Jersey.

16. Defendant Wireless Connections Group is a Florida corporation with its principal place of business in Hollywood, Florida.

17. Upon information and belief, Defendant Bragg is domiciled in and a citizen of Florida and is *sui juris*.

18. Upon information and belief, Defendant Diaz is domiciled in and a citizen of Florida and is *sui juris*.

19. This Court has jurisdiction under diversity principles pursuant to 28 U.S.C. §§ 1332. The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

20. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2), where a substantial part of the events or omissions giving rise to the claim occurred, and where the payment being sought is due.

21. This Court has personal jurisdiction under Florida's long-arm statute, through Defendants' operation of retail stores in this District. Defendants operate, conduct, engage in, and carry on business or business ventures in this state or have an office or agency in this state; have caused injury to persons or property within this state arising out of an act or omission by the Defendants outside this state, while the Defendants were engaged in solicitation or service activities within this state; and breached contracts in this state by failing to perform acts required by the contracts to be performed in this state. Defendants regularly do or solicit business, or engage in other persistent courses of conduct, or derive substantial revenue from goods used or consumed or services rendered in this state. The activities of Defendants within the state are substantial and

not isolated. In addition, this action arises out of transactions and operations connected with and incidental to Defendants' business within the state and, specifically, the business relationship between Plaintiffs and Defendants.

## GENERAL ALLEGATIONS

### The Hialeah Lease

22. On or about March 8, 2000, PSM, as Landlord, and Store 19's predecessor in interest, Vidal, as tenant, entered into a Lease (the "Hialeah Lease") for the Premises, as defined in the Hialeah Lease, consisting of an approximately 1,500 square foot area in the Palm Springs Mile Shopping Center located in Hialeah, Florida and owned by PSM.

23. PSM references and incorporates the Hialeah Lease, as amended, and the terms as defined therein, a true and correct copy of which is Exhibit "1" hereto.

24. The Hialeah Lease, as amended, is for a term of years expiring on June 30, 2024. The total Rent and other charges for the remaining term of the Hialeah Lease are in excess of $182,000.

25. On or about July 1, 2016, Vidal assigned the Hialeah Lease to Store 19. A true and correct copy of the Assignment and Assumption of Lease with Consent and Amendment of Lease is attached as Exhibit "2" hereto.

26. Pursuant to the Assignment and Assumption of the Hialeah Lease, Vidal and Store 19 remain "jointly and severally liable and responsible at all times during the term of the Lease for payment of the fixed rent, additional rent, damages and all other sums payable by the tenant thereunder." *See id.* § 10.

27. On or about July 12, 2016, Bragg executed and delivered to PSM a Guaranty of the Hialeah Lease ("Hialeah Guaranty No. 1"), which guaranteed "the full and prompt performance

8

and observance of all the terms, covenants, conditions, and agreements provided in the Lease . . . to be performed and observed by Tenant." A true and correct copy of the Hialeah Guaranty No. 1 is attached as Exhibit "3" hereto.

28. Also on or about July 12, 2016, Diaz executed and delivered to PSM a second Guaranty of the Hialeah Lease ("Hialeah Guaranty No. 2"), which guaranteed "the full and prompt performance and observance of all the terms, covenants, conditions, and agreements provided in the Lease . . . to be performed and observed by Tenant." A true and correct copy of the Hialeah Guaranty No. 2 is attached as Exhibit "4" hereto.

29. A third guaranty of the Hialeah Lease ("Hialeah Guaranty No. 3"), was executed and delivered to PSM by Wireless Connection Group on or about July 12, 2016, which guaranteed "the full and prompt performance and observance of all the terms, covenants, conditions, and agreements provided in the Lease . . . to be performed and observed by Tenant." A true and correct copy of the Hialeah Guaranty No. 3 is attached as Exhibit "5" hereto.

30. Store 19 is currently in possession of the Premises, pursuant to the Hialeah Lease.

## The Sprint Lake Worth Lease

31. On or about February 15, 2012, PLW, as Landlord, and Store 21's predecessor in interest, Vidal, as tenant, entered into a Lease (the "Lake Worth Lease") for the Premises, as defined in the Lake Worth Lease, in the Palm Springs Plaza Shopping Center located in Lake Worth, Florida and owned by PLW.

32. PLW references and incorporates the Lake Worth Lease, as amended, and the terms as defined therein, a true and correct copy of which is Exhibit "6" hereto.

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

33. The Lake Worth Lease, as amended, is for a term of years expiring on September 30, 2023. The total Rent and other charges for the remaining term of the Lake Worth Lease are in excess of $114,000.

34. On or about July 1, 2016, Vidal assigned the Lake Worth Lease to Store 21. A true and correct copy of the Assignment and Assumption of the Lake Worth Lease with Consent and Amendment of Lease is attached as Exhibit "7" hereto.

35. Pursuant to the Assignment and Assumption of the Lake Worth Lease, Vidal and Store 21 remain "jointly and severally liable and responsible at all times during the term of the Lease for payment of the fixed rent, additional rent, damages and all other sums payable by the tenant thereunder." *See id.* § 10.

36. On or about July 12, 2016, Bragg executed and delivered to PLW a Guaranty of the Lake Worth Lease ("Lake Worth Guaranty No. 1"), which guaranteed "the full and prompt performance and observance of all the terms, covenants, conditions, and agreements provided in the Lease . . . to be performed and observed by Tenant." A true and correct copy of the Lake Worth Guaranty No. 1 is attached as Exhibit "8" hereto.

37. Also on or about July 12, 2016, Diaz executed and delivered to PLW a second Guaranty of the Lake Worth Lease ("Lake Worth Guaranty No. 2"), which guaranteed "the full and prompt performance and observance of all the terms, covenants, conditions, and agreements provided in the Lease . . . to be performed and observed by Tenant." A true and correct copy of the Lake Worth Guaranty No. 2 is attached as Exhibit "9" hereto.

38. A third guaranty of the Lake Worth Lease ("Lake Worth Guaranty No. 3"), was executed and delivered to PLW by Wireless Connection Group on or about July 12, 2016, which guaranteed "the full and prompt performance and observance of all the terms, covenants,

conditions, and agreements provided in the Lease . . . to be performed and observed by Tenant." A true and correct copy of the Lake Worth Guaranty No. 3 is attached as Exhibit "10" hereto. (Hialeah Guaranties Nos. 1-3 and Lake Worth Guaranties Nos. 1-3, collectively, the "Guarantees").

39. Store 21 is currently in possession of the Lake Worth Premises, pursuant to the Lake Worth Lease.

### Breaches of the Leases, Guarantees, and Assignments

40. Tenants, Guarantors, and Vidal have breached the Leases, Guarantees, and Assignments, by failing and refusing to meet their contractual obligations to pay rent and other charges for the Premises leased from Plaintiffs.

41. Thus, on or about June 3, 2020, PSM sent written notice to Store 19 that it was in breach of the Hialeah Lease for failure to pay Rent when due on or before June 1, 2020, attached as Exhibit "11" hereto.

42. Similarly, on or about June 4, 2020, PLW sent written notice to Store 21 that it was in breach of the Lake Worth Lease for failure to pay Rent when due on or before June 1, 2020, attached as Exhibit "12" hereto.

43. In response, on or about June 4, 2020, the Tenants (through counsel) sent separate correspondence to Plaintiffs claiming that T-Mobile demanded the stores be closed by April 30, 2020, in connection with T-Mobile's acquisition of Sprint, and declaring that there was no intention of future performance under the Leases, attached as Composite Exhibit "13" hereto.

44. The June 4, 2020 correspondence from Tenants confirmed the breach of Leases and constituted an anticipatory repudiation of Tenants' future obligations under the Leases.

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

45. On June 17, 2020, Plaintiffs provided an additional written notice of default to Tenants—as well as Guarantors—and rejected the contention that T-Mobile's actions excused Tenant's performance under the Leases, attached as Exhibit "14" hereto. The notice was also sent to T-Mobile.

46. Having anticipatorily repudiated its obligation to pay Rent on July 1, 2020 and thereafter, Tenant then again breached its obligations in fact by failing to pay Rent when due on or before July 1, 2020.

47. Guarantors also failed to pay as required pursuant to the Guarantees.

48. Vidal also failed to pay pursuant to the Assignments.

49. Tenants' actions in anticipatorily repudiating and then breaching their payment obligations, waived and excused any further notices or demands by Plaintiffs to seek payment. As Tenants' conduct and communications also demonstrated, any further notices or demands by Plaintiffs were futile and would have been in vain.

50. T-Mobile is also jointly and severally responsible for the Tenant's breaches, based on its actions in intentionally interfering with the Tenants' contractual relationship with the Plaintiffs.

51. Accordingly, all conditions precedent to the filing of this action have been fulfilled, satisfied, waived, excused, or are futile.

52. Plaintiffs again declare and assert the defaults and declare the full amount of the Rents and charges for the remaining term of the Leases to now be due, in excess of $297,000.

53. This action does not waive the right of Plaintiffs, which is expressly reserved, to seek eviction of Tenants, including in a separate legal action.

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

54. Pursuant to the Leases, including Article 26.03, and the Guarantees, Plaintiffs are entitled to the award of reasonable attorneys' fees and costs from Tenants and Guarantors.

55. Plaintiffs have retained the law firm of Coffey Burlington, P.L. and is obligated to pay the firm a reasonable fee.

## COUNT I
### (ACTION FOR PAST DUE RENTS AGAINST TENANTS)

56. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-55 above, as if fully set forth herein, and further states as follows:

57. This is an action for damages arising out of Tenants' breaches of the Leases.

58. Plaintiffs and Tenants entered into the Leases as alleged above.

59. Tenants breached the Leases by failing to pay when due on or before June 1, 2020, and then anticipatorily repudiated their future obligations to pay pursuant to the Leases.

60. Tenants then failed to pay, when due on July 1, 2020, the Rents and other charges pursuant to the Leases, and are therefore in default of the Leases.

61. Plaintiffs made demand upon the Tenants for payment of the amounts due, but despite the demand, Tenants failed to pay.

62. As a direct and proximate result of Tenants' breaches, Plaintiffs have suffered damage.

WHEREFORE, Plaintiffs demand judgment against Tenant for the past-due amounts under the Leases, as well as for additional Rent and other charges that may continue to accrue, plus interest, costs, attorneys' fees, and such further relief as this Court deems just and proper.

## COUNT II
## (ACTION FOR ACCELERATED RENTS AGAINST TENANTS)

63. Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-55 above, as if fully set forth herein, and further states as follows:

64. This is an action for damages arising out of Tenants' breaches of the Leases.

65. Plaintiffs and Tenants entered into the Leases as alleged above.

66. Tenants breached the Leases by failing to pay when due on or before June 1, 2020, and then anticipatorily repudiated their future obligations to pay pursuant to the Leases.

67. Tenants then failed to pay, when due on July 1, 2020, the Rents and other charges pursuant to the Leases, and are therefore in default of the Leases.

68. Plaintiffs made demand upon Tenants for payment of the amounts due, but despite the demand, Tenants failed to pay the amounts.

69. Tenants, moreover, have further advised that their non-payment of Rent will continue, which is an anticipatory repudiation and breach of their ongoing payment obligations under the Leases.

70. Accordingly, Plaintiffs are entitled to any and all remedies available under the Leases, which provide that:

> In the event of a default by Tenant hereunder, Landlord shall have, in addition to all other remedies, the option of treating all or any part of the Rent reserved in this Lease for the remainder of the stated term hereof as immediately due and payable from Tenant to Landlord as if by the terms of this Lease it were payable in advance, it being understood that the method of monthly or other periodic payments provided for herein are for the convenience of the Tenant and available to Tenant only if Tenant is not in default under this Lease.

*See* Leases § 26.03.

71.     Pursuant to Section 26.03 of the Leases, and applicable Florida law, based on Tenants' default, repudiation, and anticipatory breach of their obligations under the Leases, the Plaintiffs are entitled to accelerate Tenants' obligation to pay the balance of the future Rents and other charges for the full remaining term of the Leases, which are in excess of $297,000. Plaintiffs have declared and hereby asserts the default and declares the full amount of the Rents and other charges for the remaining term of the Leases to now be due.[1]

WHEREFORE, Plaintiffs demand judgment against Tenants for the full amount of future Rents and charges under the Leases, plus interest, costs, attorneys' fees, and such further relief as this Court deems just and proper.

## COUNT III
### (ACTION ON THE GUARANTEES AGAINST GUARANTORS)

72.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-55 above, as if fully set forth herein, and further states as follows:

73.     Guarantors executed and delivered the Guarantees to Plaintiffs, which guaranteed "the full and prompt performance and observance of all the terms, covenants, conditions, and agreements provided in the Lease . . . to be performed and observed by Tenant."

74.     As alleged above, Tenants anticipatorily repudiated their obligation to pay pursuant to the Leases.

75.     Tenants then failed to pay, when due, the Rents and other charges pursuant to the Leases, and are therefore in default of the Leases.

---

[1] Plaintiffs expressly reserve and in no way waive their rights to terminate the Leases or Tenants' right of possession, or to seek eviction of Tenants—although those rights are not being pursued in this action.

76. Guarantors have also failed to pay or cause to be paid the amounts due. Accordingly, Guarantors are in breach of the Guarantees.

77. The payment obligations under the Leases, for which Guarantors are obligated, include the past due amounts and the balance of future Rents and other charges for the full remaining term of the Leases, which are in excess of $297,000.

WHEREFORE, Plaintiffs demand judgment against Guarantors for damages, including past due Rents and amounts under the Leases, and the balance of future Rents and other charges for the full remaining term of the Leases, which are in excess of $297,000, plus interest, costs, attorneys' fees, and such further relief as this Court deems just and proper.

## COUNT IV
### (TORTIOUS INTERFERENCE WITH LEASES AGAINST T-MOBILE)

78. Plaintiffs repeat and re-allege the allegations contained above as if fully set forth herein, and further state as follows:

79. As alleged above, Plaintiffs have a contractual relationship with Tenants under the Leases, under which Plaintiffs have legal rights.

80. T-Mobile had knowledge of the contractual relationship between Plaintiffs and Tenants.

81. T-Mobile intentionally and unjustifiably interfered with Plaintiffs' contractual relationship with Tenants by mandating that Store 19 and Store 21 close by April 30, 2020 and by restricting Tenants' ability to sell Sprint merchandise.

82. As a result of T-Mobile's intentional and unjustified interference, Tenants' breached their contractual relationship with Plaintiffs, causing Plaintiffs to suffer damages.

COFFEY | BURLINGTON
2601 South Bayshore Drive, Penthouse, Miami, FL 33133 · T. 305·858·2900  F. 305·858·5261

WHEREFORE, Plaintiffs demand judgment against T-Mobile for damages, including punitive damages, to be established at trial, plus interest, costs, attorneys' fees, and such further relief as this Court deems just and proper.

## COUNT VI
### (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP AGAINST T-MOBILE)

83. Plaintiffs repeat and re-allege the allegations contained above as if fully set forth herein, and further state as follows:

84. As alleged above, Plaintiffs have a business relationship with Tenants in connection with the Leases under which they have legal rights.

85. T-Mobile had knowledge of the business relationship between Plaintiffs and Tenants.

86. T-Mobile intentionally and unjustifiably interfered with Plaintiffs' business relationship with Tenants by mandating that Store 19 and Store 21 close by April 30, 2020 and by restricting Tenants' ability to sell Sprint merchandise.

87. As a result of T-Mobile's intentional and unjustified interference, Tenants' breached their business relationship with Plaintiffs, causing Plaintiffs to suffer damages.

WHEREFORE, Plaintiffs demand judgment against T-Mobile for damages, including punitive damages, to be established at trial, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT VII
### (BREACH OF ASSIGNMENTS AGAINST VIDAL)

88. Plaintiffs repeat and re-allege the allegations contained above as if fully set forth herein, and further state as follows:

89. As alleged above, Plaintiffs entered into two Assignments with Vidal for the Leases, whereby the Leases were assigned to Tenants.

90. The Assignments provide that Vidal and Tenants remain "jointly and severally liable and responsible at all times during the term of the Lease for payment of the fixed rent, additional rent, damages and all other sums payable by the tenant thereunder." *See* Assignments § 10.

91. Vidal breached the Assignments when it failed to pay Rent and other damages pursuant to the Leases and Assignments.

92. As a result of Vidal's breaches, Plaintiffs have suffered damages.

WHEREFORE, Plaintiffs demand judgment against Vidal for damages to be established at trial, plus interest, costs, and such further relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ *Kevin C. Kaplan*
Kevin C. Kaplan, Esq.
Florida Bar No. 933848
Alexander J. Hall, Esq.
Florida Bar No. 0112948
kkaplan@coffeyburlington.com
ahall@coffeyburlington.com
lperez@coffeyburlington.com
service@coffeyburlington.com
**COFFEY BURLINGTON, P.L.**
2601 South Bayshore Drive, Penthouse One
Miami, Florida 33133
Telephone: (305) 858-2900
Facsimile: (305) 858-5261
*Counsel for Plaintiffs*