United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Palm Springs Mile Associates, LTD, and Philips Lake Worth, LLC, Plaintiffs, <br><br> v. <br><br> T-Mobile USA, Inc., and others, Defendants. | ) ) ) ) ) ) Civil Action No. 20-22841-Civ-Scola ) ) ) ) |

### Omnibus Order Denying Motions to Dismiss

This matter is before the Court upon the motions to dismiss filed by Defendant T-Mobile USA, Inc. ("T-Mobile") and Defendant Sprint Solutions, Inc. ("Sprint Solutions" and, together with T-Mobile, the "Defendants"). (Def. T-Mobile's Mot. to Dismiss, ECF No. 40; Def. Sprint Solution's Mot. to Dismiss, ECF No. 46.) This case arises from the ripple effects of T-Mobile's recent acquisition of Sprint Corporation ("Sprint") and its subsidiaries, including Sprint Solutions. As part of the acquisition, T-Mobile and Sprint Solutions allegedly made adjustments to operations that resulted in certain brick and mortar stores ceasing to sell Sprint-branded products. Palm Springs Miles Associates, Ltd. ("PSM") and Philips Lake Worth, LLC ("PLW" and, together with PSM, the "Plaintiffs") are landlords who leased retail space to tenants (Store 19 and Store 21) that sold Sprint-branded products, but were allegedly forced to go out of business after T-Mobile and Sprint Solutions decided to pull the Sprint-branded products from the Tenants' stores. These allegations form the basis of the Plaintiffs' claims that the Defendants tortiously interfered with and conspired to tortiously interfere with the Plaintiffs' contracts (*i.e.*, lease agreements) and business relationships with the Tenants. The Defendants filed separate, but largely duplicative, motions to dismiss Counts IV, V, and VI of the amended complaint (ECF No. 24 ("complaint")) on the basis that the Plaintiffs failed to state a claim against the Defendants and that the Court lacks personal jurisdiction over the Defendants. Having reviewed the motions, the record, and the relevant legal authorities, the Court **denies** the motions to dismiss (**ECF Nos. 40, 46**).

### 1. Background and Facts[1]

In or about April of 2020, T-Mobile completed its $26.5 billion acquisition by merger of Sprint Corporation, including Sprint Solutions, Inc. (ECF No. 34 at ¶2.) Following the merger, T-Mobile had a combined total of more than 5,000 retail stores, including stores throughout the State of Florida. (*Id.* at ¶3.) T-Mobile provides wireless communications services throughout the United States, including in Florida, where it is registered to do business. (*Id.* at ¶22.) Following the merger, T-Mobile has 57 stores in Miami, 39 stores in Orlando, 31 stores in Tampa, and 30 stores in Jacksonville. (*Id.*) By virtue of the combination of T-Mobile and Sprint, the competitive relationship between them, including Sprint Solutions and its dealers, was eliminated. (*Id.* at ¶4.) The complaint alleges that T-Mobile and Sprint Solutions "acquired a peculiar and pronounced power of coercion over their now-combined dealers (and those dealers' landlords), as evidenced by the actions they took to mandate the closure of Store 19 and Store 21 (collectively, the 'Tenants') businesses." (*Id.*) The closure of those two stores allegedly interfered with the Tenants' lease agreements and business relationships with the Plaintiffs, causing the Plaintiffs harm. (*Id.*) T-Mobile and Sprint Solutions "had the power to determine the fate of Tenants' businesses, and Tenants' performance (or not) of their Leases." (*Id.*)

The crux of this lawsuit is the allegation that T-Mobile and Sprint exercised their "combined power over the fate of their retailers' businesses" and, "acting in concert, 'mandated' the closure of various retail locations, including the two Stores at issue in this case, and the resulting breach of Tenants' Leases with Plaintiffs." (*Id.* at ¶5.) There are two leases at issue in this case—the Hialeah Lease and the Sprint Lake Worth Lease ("Lake Worth Lease"). The following background sets forth the details of those two leases insofar as they are pertinent to the instant motions to dismiss The Hialeah Lease was entered on or about March 8, 2000, between PSM, as Landlord, and Store 19's predecessor in interest, Vidal, as tenant. (*Id.* at ¶26.) The Hialeah Lease expires on June 30, 2024 and the total Rent and other charges for the remaining term of the Hialeah Lease exceed $182,000. (*Id.* at ¶28.) The second lease, the Lake Worth Lease, was entered on or about February 15, 2012, between PLW, as Landlord, and Store 21's predecessor in interest, Vidal, as tenant. (*Id.* at ¶35.) The Lake Worth Lease expires on September 30, 2023 and the total Rent and other charges for the remaining term of the Lake Worth Lease exceed $114,000. (*Id.* at ¶37.)

---

[1] The Court accepts the Plaintiffs' factual allegations as true for the purposes of evaluating the Defendants' motions to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

The complaint alleges that all parties to and those responsible for the obligations under the leases (*e.g.*, guarantors and assignees) breached the leases and related agreements by failing and refusing to meet their contractual obligations to pay rent and other charges for the premises leased from the Plaintiffs. (*Id.* at ¶44.) On June 3, 2020, PSM sent written notice to Store 19 that it was in breach of the Hialeah Lease for failure to pay rent timely. (*Id.* at ¶45.) On June 4, 2020, PLW sent written notice to Store 21 that it was in breach of the Lake Worth Lease for failure to pay rent timely. (*Id.* at ¶46.) In response, on or about June 4, 2020, the Tenants, through counsel, sent separate correspondence to the Plaintiffs claiming that "with virtually no notice, . . . Sprint issued a tsunami of a letter [on April 29, 2020] providing one (1) day notice that it was shutting off its supply chain" and that, as a result, the Tenants were "mandated to close its stores" immediately. (*Id.* at ¶47 (quoting Exhibit 13, ECF No. 34-13 at 2).)

The complaint alleges that "T-Mobile and Sprint Solutions had the power to determine the fate of Tenants' business, and the Tenants' performance or not of their Leases." (*Id.* at ¶59.) According to the Plaintiffs, the store closures were the result of "efforts to integrate the two companies under the T-Mobile brand." (*Id.* at ¶61 (quoting ECF No. 34-13, Exhibit 13 at 10 (April 29, 2020 Letter)).) The April 29, 2020 "tsunami" letter is signed by Cody Welker as Vice President of Sprint Solutions, Inc. and the Sprint logo appears at the top of the letter. (ECF No. 34-13 at 2.) The letter states, in relevant part:

> As is publicly known, Sprint completed its merger with T-Mobile with an effective date of April 1, 2020. The efforts to integrate the two companies under the T-Mobile brand are well-underway. As part of this integration, we have evaluated all Sprint and T-Mobile-branded retail locations in a distribution optimization effort. The withdrawal of approval for the Facility/Facilities and the closing of the Facility/Facilities listed in Exhibit A are directly related to this optimization effort in relation to the merger. This letter serves as Sprint's written notice pursuant of Sprint's withdrawal of approval for this Facility/these Facilities pursuant to the AR Agreement.

(*Id.*) As discussed further below, the parties dispute the extent to which the text of the April 29, 2020 letter reveals whether the closure mandate came from Sprint alone or from both Sprint and T-Mobile. The complaint alleges that although the April 29, 2020 letter was signed by Cody Welker as Vice President of Sprint Solutions, Mr. Welker's LinkedIn information shows that he was a

Senior Director of National Dealers for T-Mobile at the time the letter was sent. (ECF No. 34 at ¶68.)

The Defendants argue that the Plaintiffs' claims against them must be dismissed with prejudice for lack of personal jurisdiction and for failure to state a claim. To that end, the Defendants point out that Florida is neither their state of incorporation nor the location of their principal place of business. The Defendants also argue that the Court cannot exercise specific personal jurisdiction over them because the Plaintiffs' claims for tortious interference do not arise out of their business activities in Florida or from their commission of a tort in or directed into Florida. Finally, the Defendants argue that the Plaintiffs' conspiracy claim against them fails because the underlying conduct does not constitute an independent tort and multiple defendants have not acted unlawfully to achieve together what one could not achieve individually.

### 2. Legal Standard
### A. Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### B. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1324 (M.D. Fla. 2011). First, the court must determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark*, 810 F. Supp. 2d at 1324; *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

## 3. Discussion

### A. Rule 12(b)(6) Analysis

Under Florida law, "[t]he elements of tortious interference with a contract or business relationship are: (1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385–86 (Fla. 4th DCA 1999) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). The Defendants argue that the tortious interference claim fails on the second, third and fourth elements, thus requiring dismissal of Counts V and VI with prejudice. The parties do not dispute that the Plaintiffs have adequately alleged the first element.

Although T-Mobile and Sprint Solutions make generally overlapping arguments, which are addressed below, T-Mobile adds that it did not participate in the closure of the stores (and related breach of the Leases). In sum, T-Mobile argues that the exhibits to the complaint are "proof that *another* entity informed Tenants that Sprint Solutions was withdrawing its approval of the sale of Sprint-

based products and services at Tenants' locations . . . ." (ECF No. 40 at 5 (emphasis in original).) The parties generally dispute T-Mobile's proximity to and role in the decision to pull Sprint-branded products from the Tenants' stores, and that decision is the basis of the two tortious interference claims and the conspiracy claim against T-Mobile. The parties do not dispute that Sprint Solutions was involved in the decision to pull Sprint-branded products from the Tenants' stores.

The Court finds that the complaint adequately sets forth a cause of action for tortious interference against the Defendants. The Defendants' first argument is that the Plaintiffs failed to adequately allege that the Defendants "had actual knowledge of Plaintiffs' relationship with Tenants." (ECF No. 50 at 8; ECF No. 46 at 5.) The Court agrees that the Plaintiffs' allegations with respect to the Defendants' knowledge of the contracts and business relationships between the Plaintiffs and the Tenants are short on detail. (ECF No. 34 at ¶96 ("Although not parties to the Leases, T-Mobile and Sprint Solutions had knowledge of the contractual relationship and Leases between Plaintiffs and Tenants."); *id.* at ¶101 ("Although not parties to the Leases, T-Mobile and Sprint Solutions had knowledge of the business relationships and Leases between Plaintiffs and Tenants.").) However, the Defendants do not counter the Plaintiffs' reliance on Rule 9(b) of the Federal Rules of Civil Procedure, which provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See also* S*un Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018) (holding that, "[c]ontrary to the district court's conclusion, Sun Life need not have pled Imperial's knowledge of the relevant contracts with specificity" to support its tortious interference claim) (citing Fed. R. Civ. P. 9(b)); *ThermoLife Int'l LLC v. Vital Pharm. Inc.,* No. 19-CV-61380, 2020 WL 409594, at *3 (S.D. Fla. Jan. 24, 2020) ("[A] tortious interference claim is not subject to a heightened pleading standard."). Thus, the Defendants' observation that the Plaintiffs did not allege that the Defendants were "aware of the length of the remaining terms on the Tenants' leases, whether those lease agreements contained any termination options," etc., is of no avail in light of the relaxed pleading standard with respect to knowledge. (ECF No. 46 at 7.) Additionally, the Court finds that the Defendants' reliance upon *ThermoLife Int'l LLC v. Vital Pharm. Inc.*, is misplaced. 19-CV-61380, 2020 WL 409594 (S.D. Fla. Jan. 24, 2020) (Bloom, J.). In *ThermoLife,* the court did dismiss a tortious interference claim that "contain[ed] no factual allegations regarding [the counter-defendant's] knowledge of [the counter-plaintiff's] relationships with the identified customers." *Id.* at *3. However, in that case, as made clear by the motion to dismiss that was before that court, the counter-plaintiff "fail[ed] to even identify the relationships that [the counter-defendant] ha[d] supposedly

interfered with." 19-CV-61380, ECF No. 88 at 7. In other words, the claimant in *ThermoLife* did not fail to allege knowledge of the terms of a contractual relationship; it failed to identify any relationship in the first place. That was plainly insufficient even under the relaxed pleading standard, but it is also distinguishable from the allegations here that reasonably identify the relationships at issue (*i.e.*, the landlord-tenant relationship between the Plaintiffs and the Tenants). Accordingly, the second element of the tortious interference claims is met.

The same result is appropriate for the fourth element—that the Plaintiffs suffered damages. The allegation that the Plaintiffs suffered damages is sufficient at this stage even though the Plaintiffs did not specifically allege that the stores could have "repurposed" themselves and remained open after Sprint Solutions sent the "death knell letter" making it "impossible and commercially impracticable to continue business . . . ." (ECF No. 46 at 14; ECF No. 34-13 at 2.) While this argument could be fruitful to the Defendants at a later stage in the proceedings, the Defendants have provided no authority for the proposition that the Plaintiffs were required to plead around such a defense at this stage.

The parties also dispute whether the Plaintiffs adequately alleged "an intentional and unjustified interference with the relationship by the defendant." 742 So. 2d at 385–86. As T-Mobile points out, "it was not T-Mobile that sent the letters to Tenants; it was Sprint Solutions." (ECF No. 40 at 15-16 (citing ECF No. 34-13 at 4).) The Plaintiffs cannot seriously dispute that the letter was not clearly sent by T-Mobile. Rather, they make the plausible claim that T-Mobile acted in concert with Sprint Solutions to send the letter. The April 29, 2020 letter, which is the foundation of the tortious interference and conspiracy claims, was written on Sprint letterhead and signed by Cody Welker as Vice President of Sprint Solutions, Inc. (ECF No. 34-13 at 4.) In addition to those indicia that the letter came from a Sprint entity (as opposed to T-Mobile itself), the letter expressly states that it "serves as Sprint's written notice" that it is ending sales at the Tenants' stores. (*Id.*)

However, reading the April 29, 2020 letter in the light most favorable to the Plaintiffs, as required at this stage, it appears that even if the ultimate authority to end sales rested with Sprint Solutions, the decision to end sales was the result of "efforts to integrate the two companies under the T-Mobile brand . . . ." (*Id.*) Indeed, the letter states that the cessation of sales was "part of this integration" into the new, post-merger T-Mobile. (*Id.*) The Court affords modest weight to the allegation that Mr. Welker, the letter's signatory, was also a Senior Director of National Dealers for T-Mobile. However, the Court is not persuaded by the Plaintiffs' argument that the one use of the word "we" in the letter meaningfully corroborates their position that the letter was sent by T-Mobile and

Sprint Solutions. (*Id.*) While the word "we" could refer to both T-Mobile and Sprint, when read in context it could just as easily interpreted as a reference to only Sprint. Finally, the Defendants insist that the letter speaks for itself and trumps any allegations inconsistent with the text of the letter. (*See* ECF No. 53 at 3 (citing *Gross v. White*, 340 F. App'x 527, 533 (11th Cir. 2009)). However, the Court finds that the letter is unclear and susceptible to the Plaintiffs' characterization of it as having been sent on behalf or at the behest of T-Mobile. Again, construing the facts in the light most favorable to the Plaintiffs, the Plaintiff's arguments, including their observation that Mr. Welker worked for T-Mobile at the time the letter was sent, suggests that T-Mobile was at least in a position to steer the decision to end Sprint-branded product sales at the Tenants' stores. Such a position is a prerequisite to the Plaintiffs' broader claim that T-Mobile did in fact wield its authority to mandate these changes as part of a post-merger strategy.

For the reasons set forth above, the Court also finds that at this early stage of the proceedings the complaint adequately sets forth a civil conspiracy claim. "A civil conspiracy claim requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in furtherance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." *See, e.g., Wyndham Vacation Ownership, Inc. v. Miller*, No. 619CV817ORL40EJK, 2019 WL 5394074, at *7 (M.D. Fla. Oct. 11, 2019). The complaint and incorporated exhibits contain sufficient indicia that the store closures were the product of T-Mobile's mutual reorganization strategy, *i.e.*, an agreed upon process for integrating the stores that resulted in a mandate that tortiously interfered with the Tenants' contracts and business relationships such that the Plaintiffs suffered damages. As the parties acknowledge, this analysis does not take into account what could have proven to be a relatively easy task for the Defendants' to show that they had a "legal justification or privilege to interfere . . . ." *Id.* at *6. However, such justification or privilege is an affirmative defense that poses factual questions not appropriate for resolution on a motion to dismiss. *Id.*

### B. Personal Jurisdiction Analysis

Issues relating to personal jurisdiction should ordinarily be addressed before considering the merits of a plaintiff's claims because a defendant is not bound by a court's ruling if it is not subject to the court's jurisdiction. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F. 3d 935, 940 (11th Cir. 1997). The Court departed from this general rule here, however, because the specific jurisdictional arguments raised by the Defendants hinge on whether the Plaintiffs succeeded in stating a claim for relief against them. And under Florida

law, when the basis for personal jurisdiction is the commission of a tort within the state, courts must first determine whether the complaint states a cause of action. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010). As set forth above, the Court finds that the Plaintiffs have stated a claim against the Defendants. The Court therefore proceeds to consider whether it has either general or personal jurisdiction over the Defendants.

The Court does not have general jurisdiction over either of the Defendants. In *Goodyear v. Dunlop Tires Operations, S.A. v. Brown*, the Supreme Court held that general personal jurisdiction over a corporate defendant can be asserted only where it is equivalent to an "individual's domicile" or "one in which the corporation is fairly regarded as at home." 564 U.S. 915, 924 (2011). Shortly thereafter, in *Daimler AG v. Bauman*, the Supreme Court further clarified that it was "unacceptably grasping" to subject a defendant corporation to general personal jurisdiction anywhere it engages in a "substantial, continuous, and systematic course of business." 571 U.S. 117, 137-38 (2014). On the contrary, the *Daimler* Court held that only a limited "set of affiliations with a forum" will qualify to render a defendant "at home," such as where a defendant corporation is incorporated or has its principal place of business. *Id.* at 137, 139 n.19 (requiring an "exceptional case" before general jurisdiction is available anywhere else); *see also Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015) ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.").

The Plaintiffs do not cite to *Goodyear*, *Daimler*, or *Carmouche*, nor, more importantly, do they argue that this Court should assess general personal jurisdiction under the standard mandated by those decisions. Rather, the Plaintiffs cite to pre-*Goodyear* district court cases that apply an outdated standard. The Defendants, on the other hand, explain that they are neither incorporated nor do they have their respective principal places of business in Florida. (ECF No. 40-1 at 2; ECF No. 46 at 15.) Additionally, they do not make any policy or budgeting decisions in Florida. (*Id.*) Thus, the Defendants' contacts with this state are not so akin to their states of incorporation or respective principal places of business such that they could be subject to general personal jurisdiction here.

However, the Court finds that it does have specific personal jurisdiction over the Defendants. As set forth in Florida's long-arm statute, personal jurisdiction may be exercised over a non-resident defendant "for any cause of action arising from" the commission of "a tortious act within this state." Fla. Stat. § 48.193(1)(a)2. Further, a "tortfeasor need not act within the state so long

as the effect of the tort causes harm within the state." *XN Fin. Services, Inc. v. Conroy*, 12-80143-CIV, 2012 WL 12873512, at *4 (S.D. Fla. Mar. 5, 2012) (Dimitrouleas, J.) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216–17 (11th Cir. 1999)). And where a defendant "tortiously interferes with a business relationship outside of Florida that causes injury in Florida, the [defendant] is subject to personal jurisdiction under the Florida long-arm statute." *Elandia Intern., Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1331 (S.D. Fla. 2010) (Moreno, J.) (adopting R. & R.).

Accepting the Plaintiffs' allegations as true, as discussed above, the complaint adequately alleges that the Defendants committed torts in or directed into this state. While the Defendants might have defenses based on justification or privilege, or defenses showing that the allegations are not true after discovery, at this early stage the Court finds that the complaint sufficiently alleges counts for tortious interference and conspiracy. The Defendants argue that the Court lacks specific personal jurisdiction because the Plaintiffs fail to allege that the purported tortious conduct relates to their contacts with Florida. Under Florida law there must be some "'direct affiliation,' 'nexus,' or 'substantial connection'" between the cause of action and the activities within the state. *Citicorp Ins. Brokers (Marine) Ltd. v. J.R. Charman*, 635 So. 2d 79, 81 (Fla. 1st DCA 1994). This nexus requirement is often described as "connexity," and must be met before specific jurisdiction will attach under this subsection. *Bloom v. A.H. Pond Co., Inc.*, 519 F. Supp. 1162, 1168 (S.D. Fla. 1981) (Kehoe, J.). Again, at this stage the Court finds that the decision to close (or cause the closure of) some Florida stores and while keeping other Florida stores open as part of the Defendants' efforts to "integrate the two companies" arises from their contacts with Florida, which relate to sales generated by stores in this state. (ECF No. 34-13 at 2.)

### 4. Conclusion

For the reasons set forth above, the Court **denies** the motions to dismiss (**ECF Nos. 40, 46**) and **denies as moot** the pending motion to stay discovery (**ECF No. 48**).

**Done and ordered**, at Miami, Florida, on December 29, 2020.

_____
Robert N. Scola, Jr.
United States District Judge