United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Palm Springs Mile Associates, Ltd., and Philips Lake Worth, LLC, Plaintiffs, <br><br> v. <br><br> T-Mobile USA, Inc., and others, Defendants. <br><br>――――――――――――――― <br><br> Vidal Communication Services, Inc., Cross-Plaintiff, <br><br> v. <br><br> Wireless Connections Group, Inc., WC Store 19, LLC, WC Store 21, LLC, David Bragg, and Eric Diaz, Cross-Defendants. | Civil Action No. 20-22841-Civ-Scola |

## Order Granting in Part and Denying in Part the Motion to Dismiss

  This matter is before the Court upon the motion filed by Cross-Defendants Wireless Connections Group, Inc. ("Wireless Connections"), WC Store 19, LLC, WC Store 21, LLC, David Bragg, and Eric Diaz (collectively, the "Cross-Defendants") to dismiss the amended crossclaim filed by Cross-Plaintiff Vidal Communication Services, Inc. ("Vidal"). (Am. Crossclaim ("crossclaim"), ECF No. 41; Defs.' Mot. to Dismiss, ECF No. 55.) The crossclaim seeks indemnity from all of the Cross-Defendants arising from the Plaintiffs' claims against Vidal. The motion to dismiss takes the position that only Cross-Defendant Wireless Connections is liable under the parties' indemnity agreement and that the crossclaim should be dismissed in its entirety on ripeness grounds. Vidal has responded to the motion (ECF No. 61) and the Cross-Defendants did not respond to Vidal's arguments as they did not file a reply. Having reviewed the motion, the record, and the relevant legal authorities, the Court **grants in part** and **denies in part** the motion to dismiss (**ECF No. 55**).

1. **Background and Facts**[1]

This case arises from the ripple effects of T-Mobile's recent acquisition of Sprint Corporation ("Sprint") and its subsidiaries, including Sprint Solutions. As part of the acquisition, T-Mobile and Sprint Solutions allegedly made adjustments to operations that resulted in certain brick and mortar stores ceasing to sell Sprint-branded products. Palm Springs Miles Associates, Ltd. and Philips Lake Worth, LLC (the "Plaintiffs") are landlords who leased retail space to tenants (WC Store 19 and WC Store 21, collectively "Tenants") that sold Sprint-branded products, but were allegedly forced to go out of business after T-Mobile and Sprint Solutions decided to pull the Sprint-branded products from the Tenants' stores. Additional details are set forth in the Court's December 29, 2020 Omnibus Order Denying the Motions to Dismiss filed by T-Mobile USA, Inc. and Sprint Solutions, Inc. *See Palm Springs Mile Assocs., Ltd. v. T-Mobile USA, Inc.*, No. 20-22841-CIV, 2020 WL 7711687 (S.D. Fla. Dec. 29, 2020) (Scola, J.). The following background information sets forth those details relevant to the instant motion.

The Plaintiffs sued Defendant Vidal to recover for losses after the Tenants went out of business following T-Mobile's acquisition of Sprint. Vidal has now filed a crossclaim against the Cross-Defendants in which Vidal seeks to recover damages under an indemnification agreement. (ECF No. 41 at ¶2.) On or about June 1, 2016 Vidal sold several "Sprint Stores" that it operated to Cross-Defendant Wireless Connection. (*Id.* at ¶5.) Pursuant to the sale of the Sprint Stores, Vidal and Wireless Connection entered into an Operations Transfer and Indemnification Agreement dated June 1, 2016 (the "Agreement"). (ECF No. 41-1.) One month later, on July 1, 2016, Vidal, Plaintiff Palm Springs Mile Associates, Ltd., and WC Store 19 entered into an assignment for the lease of the premises located at 960 West 49th Street, Hialeah, Florida 33012 (the "Hialeah Lease"). (ECF No. 41 at ¶7 (citing ECF No. 41-2).) On the same date, Vidal, Plaintiff Philips Lake Worth, LLC, and WC Store 21 entered into an assignment for the lease of the premises located at 3401 S. Congress Avenue, #104, Palm Springs, Florida 33461 (the "Lake Worth Lease"). (*Id.* at ¶8 (citing ECF No. 41-3).) WC Store 19 was the commercial tenant in connection with the Hialeah Lease and WC Store 21 was the commercial tenant in connection with the Lake Worth Lease. (*Id.* at ¶¶ 9-10.)

Now that the Plaintiffs have sued Vidal in connection with the Tenants' failure to pay rent due under the Hialeah Lease and the Lake Worth Lease, Vidal

---

[1] The Court accepts the Cross-Plaintiff's factual allegations as true for the purposes of evaluating the Cross-Defendants' motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

has cross-claimed against the Cross-Defendants for indemnification from exposure that Vidal may have to the Plaintiffs' claims.

Paragraph 3 of the Agreement provides:

> 3. Indemnity.
> Buyer, and its related entities, assigns, officers, principals, and agents, jointly and severally, hereby agrees to indemnify and hold harmless the Seller, its successors and assigns, related entities, any of Seller's guarantors under any Lease, and the Seller's officers, principals, attorneys, and agents, from and against any and all claims, demands, rental payments, accrued rent, late fees, penalties, fines, liabilities, taxes, damages, costs and expense of whatever kind or nature, known or unknown, contingent or otherwise, arising directly or indirectly, out of or in any way related to any claim or demand which originates after the Closing Date from that Buyer's operation of the Sprint Stores in any of the Sprint Store Locations pursuant to the Lease for each said Sprint Store Location, including but not limited to the Cutler Bay Store and Flagler Store. This Indemnification Agreement shall include all reasonable attorney's fees incurred by Seller in the defense or the handling of any such potential claim.

(ECF No. 41-1 at 3.) The Cross-Defendants do not dispute that the "Sprint Store Locations" discussed in the indemnity provision is a reference to the premises leased under the Hialeah Lease and the Lake Worth Lease. However, the parties dispute the identity of those persons and entities who are bound to indemnify Vidal under the indemnity provision. Vidal claims that Wireless Connection, WC Store 19, WC Store 21, Bragg, and Diaz "must fully indemnify and hold harmless" Vidal from any liability to the Plaintiffs. (ECF No. 41 at ¶27.) The Cross-Defendants claim that only Wireless Connection is bound by the indemnity provision. (ECF No. 55 at 5.)

**2. Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal

sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Discussion

#### A. The Scope of the Indemnity Provision

The parties do not dispute the existence of an enforceable indemnity agreement. Rather, their dispute concerns the scope of the indemnity agreement. In particular, Vidal claims that all of the Cross-Defendants are bound by the indemnity agreement and the Cross-Defendants take the position that only Wireless Connection is bound by the indemnity agreement. The indemnity language in the Agreement provides, in relevant part, that "Buyer, and its related entities, assigns, officers, principals, and agents, jointly and severally, hereby agrees to indemnify and hold harmless the Seller . . . ." (ECF No. 41-1 at 3.) The parties do not dispute that Cross-Defendant Wireless Connection is bound by the indemnity obligation. Nor could they. The agreement defines "Buyer" as Wireless Connection and expressly states that the Buyer "agrees to indemnity and hold harmless the Seller." (*Id.*) The Seller is defined as Vidal. (*Id.*)

The Court now considers whether any of Cross-Defendants Diaz, Bragg, WC Store 19, or WC Store 21 is bound by the indemnity provision. The contract was signed by Cross-Defendant Eric Diaz in his capacity "as President of Wireless Connection Group, Inc." (ECF No. 41-1 at 5.) Accordingly, Diaz argues that he cannot be personally liable under the agreement because "a person who signs a contract only in a corporate capacity is not bound as an agent." (ECF No. 55 at 5 (quoting *Spears v. SHK Consulting and Development, Inc.*, 338 F.Supp.3d 1272, 1278 (M.D. Fla. 2018)). However, the motion omits that *Spears* cites to *North American Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, which held that:

> A signature preceded by the word 'by' and accompanied by *descriptio personae*, that is, language identifying the person signing the document as a corporate officer or something similar, does not create personal liability for the person signing a contract to which he or she is not a specified party, *unless the contract contains language indicating personal liability or the assumption of personal obligations*.

No. 607-CV-1503-ORL19KRS, 2009 WL 1513389, at *6 (M.D. Fla. May 27, 2009) (emphasis added) (quoting *Fairway Mortgage Solutions, Inc. v. Locust Gardens*, 988 So.2d 678, 681 (Fla. 4th DCA 2008)). Thus, the applicable rule provides that although corporate officers are generally not bound by agreements signed in a corporate capacity, they may nevertheless be bound where the text of the contract indicates that they may be personally liable. In this case, the text of the contract specifically provides that the indemnity provision applies to Wireless Connections *and* to its "officers." (ECF No. 41-1 at 3.) There is no disclaimer of personal liability for officers. On the contrary, the contract that Diaz signed as president expressly provided that such an officer would be bound under the indemnity provision. Accordingly, the Court finds that Diaz is bound under the indemnity provision.

However, the Court reaches a different result with respect to Cross-Defendants Bragg, WC Store 19, and WC Store 21. The crossclaim leaves the Court with at least one simple question: Who is David Bragg? Unfortunately, the crossclaim does not so much as attempt to answer that question. It only makes the conclusory allegation that Bragg is bound by the indemnity provision without explaining how he is in any way related to the Agreement or this dispute. Unlike Diaz, Bragg's name does not appear on the face of the Agreement. He is not alleged to be an officer, principal, or agent of any relevant entity and the crossclaim provides no description of him. As such, the Court cannot conclude that Bragg is bound by the Agreement. The crossclaim also fails

to explain how WC Store 19 and WC Store 21 are bound by the Agreement. Vidal's response brief states that all of the Cross-Defendants, including Bragg and the Tenants, "are specifically identified in the Operations Transfer and Indemnification Agreement (DE41-7) . . . ." (ECF No. 61 at 8.) As an initial matter, there is no docket entry numbered 41-7 in this case, which the Court points out in light of Vidal's citations to other non-existent docket entries such as "DE46-7." (*See* ECF No. 61 at 2.) Moreover, and contrary to Vidal's representation to the Court, the Operations Transfer and Indemnification Agreement that appears at ECF No. 41-1 does not "specifically identif[y]" these Cross-Defendants. They are not mentioned there at all. The crossclaim's allegations and attachments leave the Court with no basis to keep Bragg or the Tenants in this case.

### B. Ripeness

The parties dispute whether Vidal can bring a claim under the indemnity provision of the Operations Transfer and Indemnification Agreement before Vidal's liability to the Plaintiffs has been established. The Cross-Defendants argue that until Vidal's liability to the Plaintiffs is established, there is no Article III Case or Controversy concerning the indemnity agreement. (ECF No. 55 at 5.) In support of their position, the Cross-Defendants cite to various cases brought under insurance policies that stand for the general proposition that an insurer's obligation to indemnify an insured from losses may not ripen until a court first determines the insured's primary liability in connection with the underlying loss. (*Id.* at 7-8 (citing *Mid-Continent Cas. Co. v. G.R. Constr. Management, Inc.*, 278 F. Supp. 3d 1302 (M.D. Fla. 2017); *Northland Cas. Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1360 (M.D. Fla. 2001) ("Because an insurer's duty to indemnify is dependent on the outcome of the case, any declaration as to the duty to indemnify is premature unless there has been a resolution of the underlying claim.")).)

The Court agrees with Vidal's position that the cases that the Cross-Defendants cite, which are from the insurance context, are inapposite. Outside of the insurance context, the general rule is that "contractual indemnity actions [under Florida law] can be filed prior to judgment in the underlying case." *Pleasant Valley Biofuels, LLC v. Sanchez-Medina, Gonzalez, Quesada, Lage, Crespo, Gomez & Machado LLP*, No. 13-23046-CIV, 2014 WL 1117254, at *2 (S.D. Fla. Mar. 20, 2014) (Cohn, J.). The Cross-Defendants, who did not file a reply brief, did not address this general rule and the Court finds no reason to deviate from it. Additionally, the penultimate sentence of the indemnity provision provides: "This Indemnification Agreement shall include all reasonable attorney's

fees incurred by Seller in the defense or the handling of any such potential claim." (ECF No. 41-1 at 3.) Although this contractual language was not raised by either party, the Court finds that it forecloses any argument that the indemnity obligation can only be triggered after Vidal's liability to the Plaintiffs is established. The plain text of the Agreement provides that the indemnity obligation is triggered as soon as the Seller, Vidal, must "defen[d]" or "handl[e]" any claim in connection with the applicable lease agreements. And that undertaking commenced as soon as this case commenced against Vidal on July 10, 2020. (ECF No. 1.)

### 4. Conclusion

For the reasons set forth above, the Court **grants in part** and **denies in part** the motion to dismiss (**ECF No. 55**). The crossclaim (ECF No. 41) is dismissed as to Cross-Defendants WC Store 19, LLC, WC Store 21, LLC, and David Bragg. However, the crossclaim shall remain pending against Cross-Defendants Wireless Connections Group, Inc., and Eric Diaz.

**Done and ordered**, at Miami, Florida, on January 5, 2021.

_____
Robert N. Scola, Jr.
United States District Judge